ETHEL L. MELTON v. NATIONAL CITY BANK, et al.

Western Section.    August 5, 1927.

Petition for Certiorari denied by Supreme Court, January 13, 1928.

1. **Deeds.** Party is entitled to have deed of the party with whom he contracts.

In an action in equity to recover the value of certain land where it was shown that the plaintiff contracted with a bank and the bank agreed to give her a warranty deed to certain land and thereafter the land was conveyed to her by an insolvent party, held that plaintiff was entitled to have a deed from the bank because a warranty deed from the bank would be worth more to her than a warranty deed from an insolvent party.

5 T. A.—41.

2. **Deeds.** A deed to land which has already been sold for taxes held not to be a conveyance of the land although the land could be redeemed.

Where the defendant contracted to deliver plaintiff a deed to certain land and the evidence showed that at the time the deed was made the land had been sold for taxes, but that it could have been redeemed by the payment of the taxes held that the deed was not such a conveyance as contemplated by the contract.

3. **Pleading.** Bill in equity held sufficiently broad to bring whole transaction between the parties under review.

Where a bill in equity among other things prayed for general relief, held that it was sufficiently broad to bring all phases of the case under review.

4. **Damages.** Damages for failure of defendant to convey land in a real estate trade held to be the value of the land to be conveyed and not of plaintiff's land.

Where plaintiff sought to recover from defendant damages for the defendant's failure to convey to her land in exchange for land by her conveyed to the defendant, held that the plaintiff was entitled to recover the value of the land to be conveyed to her, and not the value of the land she conveyed to the defendant.

Appeal from Chancery Court, Shelby County; Hon. D. W. De-Haven, Chancellor.

Affirmed and remanded.

A. W. Ketchum, W. P. Biggs and T. K. Riddick, of Memphis, for appellant.

Collier & Collier and Jno. Johnson, of Memphis, for appellee.

SENTER, J. This suit grew out of a transaction between complainant, Ethel L. Melton, and the defendant, National City Bank, by which the parties contracted for the exchange of property. The facts as disclosed by the record are as follows:

About June 1, 1921, complainant entered into a contract with Mrs. Lyde P. Myers, Admx., the widow of W. G. Myers, deceased, by which she agreed to purchase the house and lot situated in the city of Memphis, Tennessee, known and referred to in the record as on "Granville Place," and for which complainant was to pay $16,000, on the terms set out in said contract, the same being $2,000, cash, and the balance in certain installment notes, and the assumption by complainant of a certan encumbrance debt on the property, amounting to about $7,500. At the time of the execution of the contract Mrs. Melton paid to Mrs. Myers, Admx., the sum of $500, as earnest money. This contract was made subject to, and on the condition that it would be ratified and confirmed by a proper proceeding to be instituted in the chancery court of Shelby county, necessary to divest the title out of the heirs at law of W. G. Myers, deceased.

On July 21, 1922, Mrs. Melton and the National City Bank entered into a written contract for an exchange of the property of Mrs. Melton above described, for a certain tract of land situated in Marshall county, Mississippi, consisting of about 400 acres. By the

terms of this contract Mrs. Melton was to execute an assignment to the National City Bank for her contract for the Memphis property, and the National City Bank to assume the encumbrance debt thereon; and the National City Bank was to convey to Mrs. Melton the Mississippi farm property, and said conveyance to be subject, however, to a deed of trust securing an indebtedness of $3,500, to be held by the said National City Bank, payable $700 per year for five consecutive years, bearing 6% interest from date, the interest payable annually, and all of said notes payable on or before maturity; and also subject to a further encumbrance of a note due February 1, 1923, for the sum of $562.50. The contract does not specifically state who was to become the maker of the $3,500, of notes to be secured by a trust deed on the farm property, and also the $562.50 note referred to, but from the pleadings and the evidence we assume that the $3500, of notes payable as provided in the contract were to be made by Mrs. Melton as the vendee, or by such person as she may designate the deed to be made to, as the contract provides that the conveyance would be made to her, or to any person that she may name.

It appears that the title to the property which the bank contracted to convey to Mrs. Melton was the property of one J. E. Stansell, and that Stansell was indebted to the bank in the sum of $7,693.21, and on June 14, 1921, executed to the bank his promissory note for said amount, due November 1, 1921, and secured by a trust deed on the Mississippi land. The contract further provided that all taxes for the year 1922 on said respective properties should be paid by the respective purchasers, and that abstract of title, and for taxes on the resective properties should be furnished to the respective vendees by the owners of their respective properties, and subject to thirty days time to be allowed the respective parties for the examination of the title and tax abstracts.

It appears that Mrs. Melton assigned her contract with Mrs. Myers to the National City Bank, and that by a proper proceedings the title was duly vested in the National City Bank. Thereafter the bank conveyed said property (Granville Place) to the Planters Realty Company, and the Planters Realty Company, which is made the defendant in this suit, sets up by plea that it holds said land (Granville Place), as an innocent purchaser, for value, without notice of any prior or conflicting claims to the same by Mrs. Melton. However, as found by the Chancellor, and, we concur in the finding, there is neither pleading nor proof showing any specific consideration passing from the Planters Realty Company to the National City Bank.

It appears that the bank furnished an abstract of title and taxes of the Mississippi land, and the same was delivered to Mrs. Melton, and placed in the hands of her attorneys, Malone & Taubenblatt, for

examination. This abstract showed that the only taxes due on said property was for the year of 1922, and under the contract it appears that Mrs. Melton was to pay the 1922 taxes on the Mississippi property. There is some proof in the record to the effect that Mrs. Melton had some sort of an agreement with one C. G. Robinson with reference to the Mississippi land, the exact nature of which does not definitely appear, but that at her request the deed to the Mississippi land was to be made to her and C. G. Robinson.

It further appears that about September 16, 1922, Mr. A. W. Ketchum, attorney for the National City Bank, accompanied by J. E. Stansell, the owner of the Mississippi land, went to the office of Malone and Taubenblatt, attorneys for Mrs. Melton, and that a deed was prepared wherein J. E. Stansell conveyed the Mississippi land to Mrs. Ethel L. Melton and C. G. Robinson, which deed was acknowledged before Mr. Taubenblatt, as Notary Public. At this point there is considerable controversy in the record as to just what became of this deed. It is denied by Mrs. Melton that she ever saw the deed, and denies that the deed was ever delivered to her. The evidence in the record with reference to the execution of the deed and its alleged delivery and acceptance, is somewhat in conflict, and on the whole rather vague and indefinite. Mr. Ketchum testified that on the date mentioned he went to the offices of Malone & Taubenblatt, and the deed was prepared, by the terms of which the Mississippi property was conveyed by Stansell to complainant Mrs. Melton and C. G. Robinson, and the notes as provided in the contract were executed by Mrs. Melton and Robinson and turned over to him, and that he turned the deed over to Mr. Taubenblatt, as the attorney for Mrs. Melton. Mr. Stansell testified that he signed and executed a deed in the office of Mr. Taubenblatt, which deed was prepared by Mr. Ketchum and Mr. Taubenblatt. He further testified that he was called out of the private office of Mr. Malone where Mrs. Melton and Mr. Robinson were seated, and into the private office of Mr. Taubenblatt, and was told by Mr. Ketchum and Mr. Taubenblatt that the deed was ready for his signature and acknowledgment, and that he signed the deed which was lying on the table before him, but that he did not read the deed and did not know to whom the conveyance was made; that he thought he was making a deed to the property to the National City Bank in settlement of his indebtedness to the bank, and that the bank was to pay to him the difference, amounting to about $1100, and that he did not know Mrs. Melton or Robinson in the transaction. Mr. Taubenblatt testified in substance that Mr. Ketchum prepared the deed and brought it to his office, and that he took Stansell's acknowledgment to the deed as a Notary Public; that he was not at all certain as to what became of the deed, but his recollection is that the deed did not contain the revenue stamps required by law, and that he

thought probably the deed was given back to Mr. Ketchum, together with the notes, to have the revenue stamps affixed. But as to the details he admitted that his memory was bad, and he was not certain as to just what became of the deed. Mr. Stansell testified that after signing the deed he left it on the table, and did not know what became of it, and that he left the building with Mr. Ketchum, and that they went down in the elevator together. It also appears that Mrs. Melton made frequent inquiries at the bank for the deed; and it appears that the officers of the bank told her that the papers had perhaps become misplaced when they moved the bank from one building to another, and finally told her that they had been unable to find the deed. The Chancellor found from the evidence, that the deed from Stansell to Mrs. Melton was delivered to her attorney, Mr. Taubenblatt, and that Mr. Taubenblatt delivered the $3500, of notes executed by Mrs. Melton, payable to the bank. The Chancellor further found, and it was his opinion, that the reason why the deed was never recorded was because of the failure of Mrs. Melton to advance the necessary fees for recording the same. The deed was never recorded and the title to the Mississippi land remained in Stansell, until it was subsequently sold for taxes, as will be hereinafter referred to. In the finding of the facts by the Chancellor it is stated by him that "no one appears to know what became of the deed. Mr. Taubenblatt has a vague recollection that something was said about revenue stamps on the deed, which were to be furnished by the vendor."

We cannot agree to the conclusion reached by the Chancellor, under the evidence, to the effect that this deed prepared by Mr. Ketchum was actually delivered to Mr. Taubenblatt as the attorney for Mrs. Melton, especially in the sense as to complete a delivery and acceptance of the deed. The evidence is too vague, indefinite and uncertain as to just what became of the document. We think it very probable that Mr. Ketchum took the deed and notes to the bank for the purpose of having the necessary revenue stamps put upon both the notes and the deed. To say the least of it, there is no evidence that would warrant a conclusion that this deed was ever placed in possession of Mrs. Melton. It may be that the deed was left with Mr. Taubenblatt for the purpose of having the same recorded, but there is no specific evidence as to this. It is true Mr. Taubenblatt does state that he mentioned the matter of the expense of recording this deed to Mrs. Melton, but that she did not place any money with him for that purpose. However, in the view of the case taken by the Chancellor, that question became immaterial, as will further appear.

As before stated, the abstract of title to the Mississippi land, including the tax record, furnished by the National City Bank to Mrs. Melton, showed no taxes owing on the land except that for the cur-

rent year of 1922. The record discloses, and it was so found by the Chancellor, that as a matter of fact this statement in the abstract was incorrect. On May 1, 1922, this land had been sold at a tax sale for unpaid and delinquent taxes on the same for the year 1921, and at which tax sale it was sold to the State of Mississippi. Under the laws of the State of Mississippi, the owner had two years from the date of sale, May 1, 1922, in which to redeem the land, by paying the taxes for the year 1921, plus the costs. The tax for the year 1921, including the costs and penalties accruing thereon, amounted to $641.87. This sale had accurred on May 1, 1922. Mrs. Melton, by the terms of the contract, did not assume to pay the taxes on the land, except for the current year 1922. It appears that she received $100, from a part of the crop as rent after the transaction in the offices of Malone & Taubenblatt when the transaction was supposed to have been closed. The proof is not entirely clear on the question as to when she received this $100. We think it is reasonably clear by a preponderance of the evidence, however, that this was $100, which she received from the tenant from crops made on the place during the year 1922, the year she was to have gotten possession of the property. We reach this conclusion from the evidence in the record to the effect that when she undertook to rent or lease the property for the year 1923 to the same tenant who was on the place during the year 1922, this tenant declined to rent the same, giving as his reason therefor that the property had been sold for taxes, and he did not know who was the owner of the same at that time. It appears that when complainant, Mrs. Melton, received this information, from the tenant, she made inquiry by letter to the county court clerk of the county in which the land was located, and for the first time ascertained the fact with reference to a sale of the property for taxes. She was then advised by the county court clerk that it would require $641.87 to redeem the land, and that the taxes for the year 1922 was $443.61, making a total of $1,085.48 necessary to redeem the land.

Upon these facts the Chancellor held that when Stansell executed this deed to Mrs. Melton, assuming that the deed was delivered, he was not the owner of the land; that the land had been sold for taxes for the year 1921, and that he owned nothing more than the equity of redemption in the land. It was further held by the Chancellor that the National City Bank took title to the Granville Place property, but did not carry out its obligation under the contract, and convey title to the Mississippi land to Mrs. Melton, and that she received nothing whatever for her property. The Chancellor further held that she was under no obligation to redeem the Mississippi land under the tax sale, and to pay $641.87 to redeem the same. The Chancellor further held, that Stansell having nothing to convey, Mrs. Melton received nothing under his deed, except the right to

redeem his property; that she was entitled to have the land conveyed to her free from this tax encumbrance and that the sale of the property under the Mississippi law constituted more than an encumbrance, but vested the title to the property in the State of Mississippi as the purchaser at the tax sale, subject to the equitable right of redemption. The Chancellor further held that under the proof, Stansell ''was in hard financial straits. He was unable to pay his obligation at the bank; his warranty of title would have had no value. If Mrs. Melton had redeemed the land she would probably have been unable to recover the sum so paid back from him.'' We think this finding and holding by the Chancellor is well supported by a preponderance of the evidence in the record. We may add that under the contract which Mrs. Melton had with the bank, the bank contracted and agreed to convey this property to Mrs. Melton. It does not appear that at any time Mrs. Melton was advised by the bank, or anyone else, that the deed to the property would be made by Stansell and not by the bank. She had the right to assume that the bank would acquire the title from Stansell and convey directly to her, and to the end that she would have the bank's warranty of title, and not that of Stansell, who she did not know in the transaction, and as to whose financial responsibility she did not know. It is not contended that there was actual delivery and acceptance of the alleged deed, but the insistence is made that it was delivered to the attorney for Mrs. Melton. As we have above set out, we think the proof is very vague and indefinite as to what became of the deed. Certain it is, it was not placed in the possession of Mrs. Melton personally. While she evidently executed the notes called for in the deed or in the contract and turned them over to Mr. Taubenblatt, her attorney, to be by him, in turn, delivered to the bank in carrying out the transaction, she did so with the expectation that a deed to the property in Mississippi would be executed to her in accordance with the provisions of the contract between the parties. Even assuming, for the purposes of this case, that there was a delivery of the deed executed by Stansell, by placing the same in the hands of Taubenblatt as the attorney for Mrs. Melton, and that this constituted a delivery of the deed to her, and an acceptance of the deed, yet the fact remains that it was the deed of Stansell, and the warranty of title contained in the deed was the warranty of Stansell and not of the bank, and certainly there would have been no obligation upon the part of Mrs. Melton to redeem this property from the tax sale by paying out the sum of money necessary, and a sum in excess of her agreement to pay, in order to have the title vested in her. We cannot agree to the contention made by appellant in this case, and under the facts and circumstances, that it was the duty of Mrs. Melton to redeem this

property before it was ultimately sold by the State to another purchaser after the equity of redemption had expired, which was done.

The Chancellor further found as a fact, that the 468 acres of the Mississippi land, at the lowest valuation shown by the record, at the time of the contract between the parties, was $11,700; and deducting from this the $3,500 and the $562.50 secured by the vendor's lien on the property, being the notes executed by Mrs. Melton, left a balance of $7,637.50, and deducting from this amount the taxes on the property for the year 1922, assumed by Mrs. Melton under the contract, the net value of the equity is shown to be $7,193.89. The Chancellor further found that the property conveyed, or decreed to the National City Bank under the assignment of Mrs. Melton, the Granville Place, was valued at $25,000. The encumbrance on that property assumed by the bank was $15,500, and the taxes on that property for the year 1922, and assumed by the bank, is not shown. For this equity of $9,500, less taxes (for 1922) Mrs. Melton was entitled to receive the equity in the Mississippi land, worth $7,193.89, and that she did not receive this equity because of the sale of the property for the taxes on the same for the year 1921, and decreed a judgment in favor of Mrs. Melton and against the National City Bank for the amount of the value of this equity, $7,193.89, but denied a recovery for interest because of the delay in bringing the suit, and the delay in its prosecution.

In an additional finding of facts by the Chancellor, he finds (1st) that the defendant, National City Bank, knew when it arranged for the trade with complainant that the taxes on the Mississippi land were delinquent and unpaid. As stated by the Chancellor: "Stansell went to the National City Bank, to Mr. Thompson, to borrow the money to pay the taxes before they were delinquent. There was so much indebtedness against the property he could not pay the taxes and he applied to the bank to get the money to pay them. (Ex. Q. 40). This effort of Stansell to get the bank to loan him the money to pay the taxes before they were delinquent is bound to have been prior to April 1, 1922, because on that date, under the law the taxes became delinquent. The property was sold for taxes May 1, 1922. The National City Bank had knowledge of the fact of the delinquency of these taxes prior to the making of its contract with Mrs. Melton on July 21, 1922, and prior to the delivery of Stansell's deed to Taubenblatt on September 16, 1922." The Chancellor further found under the additional finding of facts that Mrs. Melton had some conditional agreement with Robinson in regard to selling the timber and clearing the land. She stated she wanted the deed made to herself and Robinson, provided Robinson carried out his agreement. She afterwards requested of Mr.

Thompson, of the National City Bank, to leave Robinson's name out of the deed and that it be conveyed to her. Robinson had no contractual relation whatever with the National City Bank with reference to this Mississippi land, and he owned no interest in the Granville Place property, etc. The Chancellor further found under the additional finding of the facts that: "Mrs. Melton did not read the deed and did not see the deed left by Mr. Ketchum with Mr. Taubenblatt. She did not know it was Stansell's deed. She was dealing with the bank. She did not know that Robinson signed the $3500 of notes to the bank. Robinson never made any claim to Mrs. Melton of any interest in the Mississippi land. Robinson's agreement with Mrs. Melton was a separate contract from that of Mrs. Melton with the bank."

We fully concur with the finding of the Chancellor on these questions of fact.

From the decree of the Chancellor, decreeing a judgment in favor of complainant against the National City Bank for the said sum of $7,193.89, and all costs of the cause, and in decreeing a lien for the same against the Granville Place property, and ordering a sale of the property for the satisfaction of the judgment unless paid within thirty days from the date of the decree, the defendant, National City Bank, has appealed to this court, assigning errors. From so much of the decree as denied a recovery in favor of Mrs. Melton against the National City Bank for the full sum of $9,500 with interest thereon, and limiting her recovery to the amount decreed in her favor, without interest, complainant Mrs. Melton, has appealed, and has assigned errors.

By the several assignments of error filed by the National City Bank, it is contended: First, that the court erred in decreeing any judgment of any amount against said appellant under the facts as shown by the record and the pleadings. Second, that the Chancellor erred in basing his decree upon matters not alleged in the pleadings. It being contended under this assignment of error that complainant's bill sought relief on the ground that the bank violated its agreement with complainant in failing to deliver to her a deed to the Mississippi land, or even an abstract of the title to the property, and that the pleadings did not present the question of a sale of the property for delinquent taxes, or seek relief on that account. Third, that the Chancellor committed many material and damaging errors against the defendant bank in his finding of the facts, some of which are referred to under this assignment of error. Fourth, that the Chancellor committed error in the conclusions drawn with reference to the effect of the taxes for the year 1921 being delinquent. By this assignment of error it is insisted that because the abstract furnished by the bank to Mrs. Melton purported

to be accurate that the bank did not have any information that the taxes for 1921 were delinquent, and that the Chancellor should have found that it was the duty of Mrs. Melton, before the equity of redemption of the land expired, to have paid the delinquent tax and penalties, and redeemed the land, and deducted the same from the amount she was owing to the bank on the notes executed by her. By the fifth assignment of error it is insisted that in any event, the judgment decreed against the bank is excessive; that the land had been valued at only $8,000, the amount that Stansell agreed to take for it, and upon that valuation her recovery at most should have been for only $3,493.89.

We will not discuss these five assignment of error separately. We are of the opinion that the bill of complainant is sufficiently broad to bring the whole transaction between the parties under review. The whole suit grows out of the alleged breach of the contract between the parties with reference to the interchange or exchange of this property, and a vesture of title in the respective properties to the respective parties. While it is true the bill alleges that the defendant bank failed to execute and deliver a deed to her to the property in Mississippi as it contracted and agreed to do, and that no title was vested in her to the property on account of the failure of the bank to execute and deliver the deed to her. The bill prays for general relief. The bill makes the following allegations, among others: "She further states that while she had complied with her contract the bank has wholly failed, neglected or refused to comply with its contract, and though more than two years have elapsed and though she has made repeated demands on the bank to carry out its contract, it has wholly failed and refused to do so, and this complainant is now, and has been all this time without any consideration having been paid her for her equitable interest in the Granville Place property."

There are other allegations in the bill, when taken as a whole, and in connection with the prayer in the bill for general relief to which she may be entitled, sufficiently presents the issues. For instance, it is further alleged in the bill: "Failing to get any consideration from the bank, or any information, she caused an investigation to be made of the title to the property in Marshall county, Miss. This investigation revealed the fact that the National City Bank, did not have, at the time it made its contract with complainant, nor has it since acquired, so far as the records show, a title to the property in Marshall county, Miss. So far as the records of Marshall county show the defendant, National City Bank, has never been in position to deliver to her a deed to the lands in Marshall county as provided in its contract with complainant, which

she assumes is the reason why it has not carried out its contract,
. . ."

With reference to the third assignment of error, we are of the opinion that by a decided preponderance of the evidence, the finding of the facts complained of under this assignment of error, are well supported by the evidence. Nor do we think that the contention made by the defendant National City Bank under its fourth assignment of error, which is with reference to the inference drawn by the Chancellor on account of the delinquency of the taxes on the property for the year 1921, can be sustained. For the reasons hereinbefore set forth, we are of the opinion that there was no error in the conclusions reached by the Chancellor on this subject. We are also of the opinion that the judgment is not excessive. While it is true Stansell stated that his agreement with the bank was that he would receive about $1,000 net after the satisfaction of his debt by conveying this property. Stansell was in a state of financial stress, and no doubt was glad to get anything out of the property in excess of his debt. It appears that because of the general deflation in land values, and of the low prices of farm commodities, that there was but little trading in farm lands at the time. But, however, this may be, the proof in the record is to the effect that the market value of the land was $25 to $30 per acre. The Chancellor adopted the lowest estimate and based the decree on $25 per acre valuation. In this we find no error.

It results that all assignments of error by the defendant National City Bank are overruled and disallowed.

Without going into a discussion of the assignments of error made by the complainant, Mrs. Melton, we are of the opinion that the Chancellor reached a proper decree. We think that the measure of damages as found by the Chancellor was the net value of the equity in the Mississippi farm lands, under the facts, and not the net equity in the Granville Place property. We are also of the opinion that there was no abuse of the discretion of the Chancellor in disallowing interest on the recovery.

It results that all assignments of error, both for complainant and defendant, are overruled and disallowed, and the decree of the Chancellor is affirmed. The cost of this appeal will be paid by the defendant, National City Bank, and surety on the appeal bond. The cause is remanded to the chancery court of Shelby county for the carrying out of the decree with reference to the lien decreed against the Granville Place property.

Owen and Heiskell, JJ., concur.